DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Motors Insurance Corporation,           )
                                         )     CASE NO. 5:06 CV 2911
                    Plaintiff,           )
                                         )
        v.                               )     MEMORANDUM OPINION
                                         )     (Resolving Docket Nos. 2, 17)
PASCO, Inc.,                             )
                                         )
                    Defendant.           )
                                         )

## I. Introduction

### A.  The Relief Sought in this Action

The plaintiff has moved for injunctive relief to prevent compliance with the contractual agreement it has with the defendant PASCO to engage, upon notice, in mandatory arbitration. For the following reasons, the motion (Docket No. 2) is denied.

### B.  The Case of PASCO, Inc. v. PDP Group, Inc., et al, Case No. 5:04 CV 911

The historical setting that precedes the filing of the complaint in this case is found in *PASCO v. PDP Group, Inc., et al.*  The complaint in that case was filed on May 14, 2004.  The plaintiff PASCO joined as defendants PDP Group, Inc., and AccuTel.  In the complaint, the plaintiff PASCO alleged that it developed a system to capture insurance information and provided that service by contract to non-party Motors Insurance Corporation ("MIC"), a wholly owned subsidiary of GMAC. PASCO's contractual relationship with MIC is alleged to have been terminated and MIC is alleged to have switched the business from PASCO to PDP and AccuTel, defendants in the case.

(5:06 CV 2911)

Continuing, PASCO alleged that the Defendants PDP and AccuTel misappropriated certain of

PASCO's trade secrets in violation of Ohio's version of the Uniform Trade Secrets Act,  O. R C.

Section 1333.61 *et seq.*[1] Plaintiff seeks compensatory and punitive damages from PDP Group

and AccuTel.

There has been considerable activity in the initial case of *PASCO V. PDP Group*.  The

docket entries in this case now number 160.  Discovery problems developed and eventually, on

June 21, 2005, the Court appointed a Special Master, Attorney Ray L. Weber, to resolve

discovery disputes.  The Special Master has played a very active role and has filed four interim

reports.  See Docket Nos. 94, 96, 103, & 119.

The Court filed an order on August 2, 2006, scheduling the trial in this case for the two-

week period beginning September 10, 2007 (See Docket No. 138).  On August 11, 2006, the

Court filed an order scheduling a status conference for September 6, 2006 (Docket No. 144).  On

September 1, 2006, a motion for permission to participate in the status conference was filed by

the non-party Motors Insurance Corporation (See Docket No. 150).  (The Court granted the

motion).  As a result of the status conference, the parties proceeded to mediation before Attorney

John Liber.  On November 7, 2006, Attorney Liber notified the Court that the mediation efforts

had been unsuccessful.  Thereafter, the Court conducted a status conference on December 5,

---

[1]See Appendix 1 for a more complete description of PASCO's complaint.

2

(5:06 CV 2911)

2006, and as a result, published an order on December 5, 2006 setting forth the following

deadlines for the single issue dispositive motion:[2]

> January 12, 2007 - Motion due on single issue
>
> January 19, 2007 - Plaintiff to indicate in writing what discovery is
> needed to respond to the motion
>
> February 23, 2007 - Plaintiff's indicated discovery completed
>
> March 23, 2007 - Plaintiff's response to motion due
>
> March 30, 2007 - Defendants to indicate in writing what discovery
> is needed to reply
>
> April 27, 2007 - Defendants' indicated discovery completed
>
> May 11, 2007 - Defendants' reply due

As a consequence of the foregoing, the issue of whether PASCO has a viable action

against the defendants PDP and AccuTel for trade secret violations remains unresolved.

**C.  A Summary of the Relief Sought by the Plaintiff Motors Insurance Company, Corporation (MIC) in this Case, 5:06 CV 2911**

When filed, the initial case of *PASCO v. PDP Group* was assigned to this branch of the

court.  When the above-captioned case was filed, on December 4, 2006, it was assigned to Judge

James Gwin of this court.  With the approval of Judge Gwin and the undersigned judge, this case

was transferred to this Court's docket under the provisions of Local Rule 3.1(b).

The MIC complaint in the above-captioned case contains 65 paragraphs in 17 pages.  The

Court provides, in Appendix 2, the paragraphs headings from the complaint and selected

---

[2]The single issue is defined in Docket No. 160 as to "whether the trade secrets claimed by PASCO are protectible.[sic].

3

(5:06 CV 2911)

paragraphs under those headings to provide a summary of Plaintiff MIC's claims against

Defendant PASCO.  Relevant to this Opinion is MIC's request for injunctive relief to prevent the

contractual obligation to engage in mandatory arbitration.

## II. Procedural background

On December 4, 2006 Plaintiff MIC filed its complaint seeking declaratory and other

relief (Docket No. 1). At the same time, Plaintiff also filed a motion for a temporary restraining

order (Docket No. 2). When this matter was transferred to this branch of the Court, on December

6, 2006,  the Court issued an Order denying the motion insofar as it was a motion for temporary

restraining order yet construing the motion as one for a preliminary injunction. The Court then

scheduled this matter for a hearing that was conducted on December 19, 2006.

As is the Court's practice, the parties were instructed serve on their opposition and file

appropriate affidavits and/or depositions with respect to the issues raised by the motion prior to

the hearing. Each party was granted one half hour of argument or live testimony at the hearing in

support of or in opposition to the motion.

The Court also requested each side to brief the issue of jurisdiction, specifically

"addressing the question of whether this Court has jurisdiction, in light of Article 8.1 of the

Agreement attached to the Complaint as Exhibit A."  See December 6, 2006 Order, Docket No. 6

at 2.

Both Plaintiff and Defendant addressed the issue of jurisdiction. See Docket Nos. 10 &

11. Defendant PASCO  filed a  motion to dismiss alleging a lack of jurisdiction based on the

4

(5:06 CV 2911)

arbitration clause in the Agreement.  Plaintiff filed a brief arguing that Defendant has waived that provision of the contract by its conduct.

The Court conducted the hearing on Plaintiff's motion for a preliminary injunction on December 19, 2006.  Based on the quality of the arguments presented at the hearing and to assist in the preparation of this Memorandum Opinion, the Court requested that the transcript be prepared.  The hearing transcript has been filed and appears at Docket No. 15. At the hearing, the Court granted the parties leave to file supplementary briefs or evidentiary materials in support of or in opposition to the motion. Plaintiff has filed a supplemental brief in support (Docket No. 13) and Defendant has filed a memorandum in opposition to the motion for a preliminary injunction (Docket No. 14).   Without leave of Court, Plaintiff filed a reply brief in support of the motion (Doc. No. 16) and Defendant has filed a motion to strike or in the alternative to file a sur-reply brief (Docket No. 17). The motion to strike is denied, but Defendant is granted leave to file the sur-reply brief.

As to the issue of supplemental affidavits, counsel for the Plaintiff stated at the hearing that he was satisfied with and would rely upon the affidavits filed in support of the motion (Tr. at 47). Counsel for Defendant indicated his desire to submit supplementary affidavits, which Defendant has filed at Docket No. 14-1 and 14-2. Based on those affidavits, deposition transcripts and exhibits in support of or in opposition to the motion for a  preliminary injunction, the Court makes the following findings of fact in support of its ruling on the motion for a preliminary injunction.

(5:06 CV 2911)

## III. Findings of Fact

1. On or about July 17, 2000, PASCO and MIC  entered into a contract that, at Section

8.1, called for a dispute resolution procedure for issues arising under the contract.  That section

provides in part:

> (A) Negotiation. The parties will attempt in good faith to resolve any question or dispute relating to this Agreement (a "Controversy") promptly by negotiation between designated representatives of the parties who have authority to settle the Controversy. The disputing party will give the other party written notice of the Controversy. Within 10 days after receipt of the notice, the receiving party will submit a written response. The notice and response will included a statement of each party's position and a summary of the evidence and arguments supporting its position. The designated representatives will meet at a mutually acceptable time and place within the 20 days of the date of the disputing party's notice and thereafter as often as they reasonably deem necessary to exchange relevant information and to attempt to resolve the Controversy.[3]

 Mandatory mediation and binding arbitration, upon proper notice, was also included as part of

the dispute resolution procedure under Section 8.1.

2. PASCO filed a lawsuit against PDP Group Inc. and AccuTel, Inc. on May 14, 2004.

The Court has provided the pertinent allegations of that complaint in Appendix 1.

3. On June 1, 2004, shortly after PASCO filed its complaint, the law firms of Brooks

Kushman, for the Defendants AccuTel and PDP, through attorney Mark Cantor, entered into an

agreement with counsel for PASCO in the *PASCO v. PDP Group, Inc.* litigation related to an

extension of time for the defendants in that action to respond to the Complaint.  See Exhibit 1 to

Affidavit of Alan Hirth, Docket No. 12-2, June 1, 2004 letter from Mark Cantor to Alan Hirth.

Mr. Cantor, representing MIC as well as the defendants in the action, states that "MIC agrees it

---

[3]See Exhibit A, Docket No. 2-10, Plaintiff MIC's Complaint, at p.20.

6

(5:06 CV 2911)

will not file an arbitration proceeding in connection with the dispute between the parties during

the terms of the extension."  Mr. Cantor further stated:

> As we discussed, we are considering filing a motion to dismiss the Ohio case, as
> we believe that the real dispute is between the contracting parties and that it
> should be resolved in arbitration pursuant to the agreement. MIC's agreement not
> to file an arbitration proceeding while the extension is in place should not be
> deemed to prejudice and arguments defendants may make in connection with a
> motion to dismiss the action pending in Ohio.

The Court also finds that until approximately August 2006, the law firm of  Brooks Kushman

continued to represent both MIC and the defendants in the other action. Plaintiff MIC has

submitted no evidence of a Chinese wall or any other limitations of its use of documents

produced by PASCO to PDP and AccuTel in the first litigation.

4. One of the Defendants in the  *PASCO v. PDP Group, Inc.* litigation, AccuTel, is a

subsidiary of GMAC.[4]  MIC is a subsidiary of GMAC.[5]

5. In March 2005, MIC, as a non-party, through the law firm of Brooks Kushman,

actively resisted the discovery requests propounded upon it by PASCO in the *PASCO v. PDP

Group, Inc.* litigation. MIC would only agree to release documents to PASCO if would waive its

right to pursue contractual claims against MIC. In opposing the discovery requests, in-house

counsel for MIC referred to the Agreement's dispute resolution provisions and stated: "Thus,

questions arising out of the Service Agreement cannot properly be raised before the Northern

---

[4]See MIC's Complaint, at Paragraph 12.

[5]See Tr. at 46. For purposes of this finding, the Court considers "GMAC" the same entity
as GMAC LLC.

(5:06 CV 2911)

District Court of Ohio."[6] PASCO refused to waive its rights to pursue MIC according to the terms of the Agreement.

   6. PASCO argued that it needed discovery from MIC to show how the defendants in the *PASCO v. PDP Group, Inc.* litigation obtained the confidential information at issue in that litigation. PASCO pursued the requested discovery in several forums and was ultimately granted the discovery documents it sought from MIC. The Court finds that the discovery PASCO received from MIC was necessary for its claims against PDP and Accutel and further finds that PASCO did not engage in the discovery requests to MIC in the earlier litigation as a means of gaining a strategic advantage over MIC.

   7. In January 2006, during settlement discussions related to the earlier litigation, counsel for PASCO wrote to Brooks Kushman, counsel for MIC, PDP and AccuTel:

> We assume that with any settlement you will seek a release for MIC/GMAC. Therefore, while they are not named in this lawsuit, we have included them in this demand. If our assumption is wrong, we can discuss settlement without PASCO's potential claims against MIC/GMAC being involved.

The letter, see Affidavit of Alan Hirth, Docket No. 12-2, Exhibit 6, also described PASCO's theory of damages against MIC.

   8. On or about August 15, 2006, PASCO sent to MIC a letter entitled "Notice of Controversy" to commence the dispute resolution procedures pursuant to the agreement. See Plaintiff MIC's Motion for Temporary Restraining Order, Declaration of John Boris, Docket No. 2-3, Exhibit 5, letter from Alan Hirth to MIC. The Court finds that the allegations of harms and

---

[6]Letter of MIC's Attorney Anthony Rivera to PASCO's counsel, Debra Horn, Exhibit A to Horn Affidavit, Docket No. 14-3.

(5:06 CV 2911)

damages described in the January 2006 letter from PASCO to MIC are substantially the same as the allegations of harms and damages sought in the "Notice of Controversy" letter given by PASCO to MIC.

9. On November 1, 2006, PASCO and MIC participated in a mediation, pursuant to Section 8.1(B) of the Agreement. The mediation did not resolve the dispute.

10. On November 2, 2006, PASCO served its Arbitration Claim upon MIC. See Plaintiff's Motion for Temporary Restraining Order, Docket No. 2-10, Declaration of John Boris, Exhibit 7.  The Court finds that the Arbitration Claim makes substantially the same allegations of harm and damages as those described in both the January 2006 letter from PASCO to MIC and the August 2006 Notice of Controversy sent by PASCO to MIC.

11. The parties have selected an arbitrator and scheduled an arbitration pursuant to the Agreement. PASCO agreed to a thirty-day extension for the initiation of the arbitration hearing, which is permitted by the Agreement, and the hearing is now scheduled for mid-February, 2007.

12. PASCO has allowed MIC complete access to discovery from the *PASCO v. PDP Group, Inc.* litigation, which includes deposition transcripts of PASCO's executives and PASCO's financial records.  PASCO has also agreed to exchange expert reports with MIC and to allow depositions of the experts prior to the arbitration hearing.[7]

14. Because of the definitions of confidential information and trade secrets in

---

[7]See Affidavit of Alan Hirth, Docket No.12-2 at para. 18-19.

9

(5:06 CV 2911)

Section 6.5 of the Agreement between PASCO and MIC, PASCO's claims that it seeks to arbitrate with MIC are different than its common law trade secret claims against AccuTel and PDP in the first lawsuit.

15. Based on the choice of law provision in the Agreement, the arbitration claims will be decided based upon Michigan law. The common law trade secret claims that PASCO has brought against Accutel and PDP in the first lawsuit will be determined according to Ohio law.

16. At no point did MIC  give notice of its intent to arbitrate a dispute with PASCO according to the terms of the Agreement. At no point was MIC prevented from giving notice of its intent to arbitrate a dispute with PASCO.

17. Throughout the course of the litigation against PDP and Accutel, PASCO has stated that its claims against MIC were separate from its claims against the two named defendants in that action. Because of the agreement and its dispute resolution provision, PASCO was required to litigate this matter in two different forums.

18. MIC's counsel during the discovery phase of the other litigation continued to maintain that either MIC or PASCO could initiate arbitration proceedings at any time.

19. PASCO never stated that it was not going to pursue its contract claims against MIC. In order to waive a provision of the agreement, there must be a written waiver signed by the party to be charged with the waiver. PASCO has not waived its right to arbitrate the dispute pursuant to the agreement.

10

(5:06 CV 2911)

### IV. Preliminary Injunction Standard

The Court considers four factors when ruling on a motion for a preliminary injunction:

(A) the plaintiff's likelihood of success on the merits;

(B) whether the plaintiff may suffer irreparable harm absent the injunction;

(C) whether granting the injunction will cause substantial harm to others;

(D) the impact of an injunction upon the public interest.

Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, 274 F.3d 377, 400

(6th Cir.2001).  "None of these factors, standing alone, is a prerequisite to relief; rather, the court

should balance them."  Golden v. Kelsey-Hayes Co., 73 F.3d 648, 653 (6th Cir. 1996).

### V. Application of the Four Factors to Plaintiff's Motion for Preliminary Injunction

#### A. Likelihood of Success on the Merits

As described above, infra at 8, in the complaint, Plaintiff MIC seeks injunctive relief on

three counts of the complaint: Count One: Intentional Misrepresentation; Count Two: Equitable

Estoppel; and Count Three: Declaratory Judgment on the basis of waiver or laches. In all three

counts, Plaintiff seeks to prevent Defendant PASCO from asserting its rights under the

arbitration provision of the agreement between the parties.

To narrow the scope of the discussion, the Court first finds that Plaintiff is seeking

preliminary injunctive relief only upon Count Three of the Complaint. See Brief in Support of

Motion for Temporary Restraining Order, Docket No. 2-2 at 10.[8]  Count Three seeks a

_____

[8]The Court notes that even if Plaintiff MIC had moved the Court for a preliminary injunction as to Count One (Intentional Misrepresentation) or Count Two (Equitable Estoppel), (continued...)

11

(5:06 CV 2911)

declaratory judgment barring Defendant PASCO from employing the arbitration provision in the

Agreement based upon "the doctrines of waiver, laches or the like." Complaint, at para. 54.

Plaintiff MIC argues that Defendant PASCO "has acted inconsistently with an intent to arbitrate

and has thereby waived its right to arbitrate its claims under the Agreement" and seeks a

declaration that the arbitration provision of the Agreement between the parties is no longer of

any force or effect. Complaint, at paras. 55-56.[9]

There is a strong presumption in federal courts in favor of enforcement of contractual

arbitration agreements. The Federal Arbitration Act (FAA), 9 U.S.C. Section 1 et seq., creates a

federal substantive law that favors enforcement of arbitration clauses brought before the Court.

This policy was described as follows by the Sixth Circuit stated in Great Earth Companies, Inc.

v. Simons, 288 F.3d 878 (6th 2002):

> "[A]lthough state law may dictate the standards for generally applicable contract
> defenses, such as fraudulent inducement, the FAA governs the enforceability of
> arbitration clauses generally. . . and expresses a 'liberal federal policy favoring
> arbitration agreements' that must be taken into account even when state-law
> issues are presented."

288 F.3d at 891 (citations omitted).

---

[8](...continued)
based on the likelihood of success on the merits of those claims and based on the facts as found
by the Court, the result would have been the same.

[9]Plaintiff also seeks a declaration that PASCO is required to file its arbitration claims
with the American Arbitration Association and a declaration that MIC is not permitted to make
an arbitration claim for punitive damages. See Complaint at para. 54.  Plaintiff has not moved the
Court to grant a preliminary injunction on the basis of either of those two provisions of the
Complaint and the Court would not find a sufficient basis to enjoin the arbitration on the basis of
those allegations if the Court had been so moved.

(5:06 CV 2911)

But this strong presumption in favor of arbitration still yields to certain legal and equitable defenses. Plaintiff cites a line of cases which provide for waiver of contractual arbitration based on participation in litigation concerning the matter. See, e.g., <u>General Star Nat. v. Administratia Asigurarilor de Stat.</u>, 289 F.3d 434 (6th Cir. 2002) and <u>O.J. Distributing v. Hornell Brewing Co.</u>, 340 F.3d 345 (6th Cir. 2003).

<u>General Star</u> involved a dispute between two insurance companies in which, following a lawsuit properly filed by the plaintiff, the defendant waited more than one year from the entry of a default judgment, and almost seventeen months from the commencement of the lawsuit, before appearing in the action.  Defendant sought to have the default judgment vacated based on a mandatory arbitration clause contained in an agreement between the parties.  The Sixth Circuit affirmed the lower court decision that Defendant  waived its right to arbitrate quoting from an earlier decision which held that "an agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon." 289 F.3d at 438, <u>quoting from</u> <u>Germany v. River Terminal Ry. Co.</u>, 477 F.2d 546, 547 (6th Cir. 1973).

In <u>O.J. Distributing</u>, the facts were slightly different. Plaintiff distributed non-alcoholic beverages supplied by Defendant pursuant to a sales agreement entered into by the parties. A manufacturer of one of the beverages Plaintiff distributed sent Plaintiff a letter stating that Plaintiff would no longer be the area distributor for their product. Defendant was copied on the letter. No reference was made to the sales agreement. Over the course of fifteen months, as Plaintiff responded to the letter, Defendant on several occasions, through different

13

(5:06 CV 2911)

representatives, denied the existence of the sales agreement. Defendant did not respond when

copies of the agreement were produced.

Plaintiff filed a lawsuit and received an entry of default after Defendant failed to

respond. The lower court set aside the entry of default for failure of service, a conclusion that

was affirmed by the Sixth Circuit. 340 F.3d at 355. The lower court also stayed the action based

on the arbitration provision in sales agreement. On appeal, the Sixth Circuit that Defendant, by

its conduct, had "waived its right to arbitrate due to its actions of engaging in negotiations with

Plaintiff for approximately fifteen months. . .while at the same time denying the existence of the

Agreement and, therefore, the arbitration provision, to the detriment of Plaintiff." 340 F.3d at

357. Defendant's long delay in asserting its rights under the arbitration provision was key to the

Court's determination:

> Thus, as in <u>General Star</u>, Defendant slept on its rights for approximately fifteen
> months. . . while Plaintiff incurred costs associated with the matter and was
> prejudiced as a result. Accordingly, as in <u>General Star</u>, we find that Defendant
> waived its right to arbitrate the matter. *See* 289 F.3d at 438.

<u>O.J. Distributing</u>, 340 F.3d at 358.

A good summary of the doctrine of waiver by litigation is found in <u>Systran Financial</u>

<u>Services v. Giant Cement Holding</u>, 252 F. Supp. 2d 500 (N.D. Ohio J. Carr 2003), where it states

that:

> The general rule is that the right to arbitration is waived when the party actively
> participates in litigation or acts inconsistently with its rights to proceed with
> arbitration [citations omitted] . . . . While there is no bright-line rule as to what
> constitutes waiver, '[c]onduct such as filing responsive pleadings while not
> asserting a right to arbitration, filing a counterclaim, filing pretrial motions,
> engaging in extensive discovery, use of discovery methods unavailable in

14

(5:06 CV 2911)

> arbitration, and litigation of issues on the merits have all been considered by
> courts to amount to a waiver of the right to arbitration.'"

252 F.2d at 506 quoting from Southern Sys., Inc. v. Torrid Oven Ltd., 105 F. Supp. 2d 848, 852

(W.D. Tenn. 2000).

As the quote above demonstrates, parties who engage in litigation against each other at

any stage, from filing the complaint to trial on the merits, run the risk of waiving the arbitration

they may have previously agreed to.  The key is against each other. All of the cases cited by the

parties involve parties to an agreement with an arbitration clause who are pursuing litigation

against each other directly in court.  Neither party provides the Court with authority for the

specific proposition advanced by Plaintiff that extensive discovery gained by one party to a

contract with an arbitration provision from the other party to the contract waives the right to

arbitrate even when the parties to the agreement are not directly involved as parties to the

litigation.  In the Court's view, Plaintiff MIC seeks an extension of the application of the waiver

by litigation position, arguing that by engaging in extensive discovery in a related case,

Defendant PASCO has obtained an unfair advantage over MIC and therefore PASCO's claim to

arbitrate has been waived.

Prejudice or harm to the party alleging waiver by litigation is one element of such a

claim. Systran Financial Services, 252 F.2d at 506. As evidence of harm, MIC argues that it will

be at a distinct advantage in the arbitration because PASCO has had more than two years to

develop its claims with the use of discovery from the other litigation.  MIC acknowledges that all

the discovery developed in that litigation is available to MIC.  However, MIC argues that while

PASCO is well-schooled in its claims against MIC, MIC has not had the opportunity to conduct

(5:06 CV 2911)

discovery of PASCO in a way for MIC to oppose PASCO. Relying on the discovery conducted

by AccuTel and PDP is "insufficient and incomplete" because the nature of the claims against

the defendants in the other action are different than the arbitration claims PASCO raises against

MIC. See MIC's Post Hearing Brief, Docket No. 13 at p.5-6 which states:

> For example, there has been no discovery on PASCO's disclosure of its allegedly
> confidential information to third parties in developing new clients or bidding on
> new work. Similarly, there has been no discovery on the steps PASCO has
> taken–or failed to take–to protect this non-trade secret confidential information.
> There has also been no discovery on the damages flowing from the alleged
> disclosure of this non-trade secret confidential information.  Thus, giving MIC
> access to the existing discovery in the AccuTel/PDP Litigation does not undo or
> eliminate the prejudice arising out of PASCO's use of judicial discovery [footnote
> omitted].

Still, "waiver of the right to arbitration is not to be lightly inferred." Cotton v. Sloan, 4

F.3d 176, 179 (2nd Cir. 1993) quoted in O.J. Distributing v. Hornell Brewing Co., 340 F.3d at

355-356.  The "essential question is whether, under the totality of the circumstances, the

defaulting party has acted inconsistently with the arbitration right." Carcich v. Rederi, A/B

Nordie, 389 F.2d 692, 696 (2nd Cir. 1968) quoted in Systran v. Financial Services, 252 F. Supp.

2d at 506.

The Court finds, for the purposes of considering preliminary injunctive relief, that in this

case, under the totality of the circumstances, Plaintiff has not demonstrated a likelihood of

success on the merits of its "waiver by litigation" claim.[10]   The facts demonstrate that (1) both

---

[10]Counsel disagree on the correct burden of proof Plaintiff must demonstrate in order to
prevail on a preliminary injunction. Defendant PASCO argues that Plaintiff must demonstrate
that it is entitled to a preliminary injunction by clear and convincing evidence and cites
persuasive authority in support of this position. See Draudt v. Wooster City School District

(continued...)

16

(5:06 CV 2911)

parties affirmed, during the course of the *PASCO v. PDP Group* litigation,  the right and obligation to arbitrate any disputes between the parties to the agreement;[11] (2) one party to the agreement was required to litigate in two forums because of claims against both a party to the agreement and similar claims against defendants not bound by the arbitration provision; (3) the discovery sought of the party to the agreement claiming prejudice was necessary for the prosecution of the other litigation; (4)  the one claiming prejudice from discovery engaged the same law firm to respond to the demands for discovery as the defendants in the related case, thus ensuring the sharing of strategy and response and access to documents; (5)  discovery from the other litigation has been shared between the parties to the agreement; (6) and where, as here, the Plaintiff has not shown that it was prevented  from initiating its own arbitration claim if it believed at any point that it was going to be prejudiced by the information gathered by the other party to the arbitration agreement in the parallel litigation.

　　　　In addition to waiver, Plaintiff MIC also argues that PASCO's claims should be barred by laches. In the Sixth Circuit, "laches is understood to be 'a negligent and unintentional failure to protect one's rights.'" <u>Chirco v. Crosswinds Communities, Inc.</u>, __ F.3d __, No. 05-1715 (6th Cir. January 10, 2007) slip. op. at 3, <u>quoting from</u> <u>Elvis Presley Enters., Inc. v. Elvisly Yours,</u>

---

[10](...continued)
<u>Board of Education</u>, 246 F. Supp. 2d 820, 825 (N.D. Ohio 2003) (Gwin, J.). Plaintiff argues that standard only applies in trade secret and copyright cases and this is, at heart,  a breach of contract action. Because the outcome would be the same whether the Court used the clear and convincing standard or some lesser standard, the Court does not need to resolve this dispute.

[11]Cf. <u>O.J. Distributing</u>, 340 F.3d at 57, where one party denied the existence of the agreement that contained the arbitration provision and then later, unsuccessfully, sought a referral to arbitration based on the same agreement.

(5:06 CV 2911)

Inc., 936 F.2d 889,894 (6th Cir. 1991).  While laches may be a different theory than waiver, for the purposes of argument in this case counsel for the Plaintiff indicated at the hearing that he was not drawing a distinction between the two terms.

> MR. LUCCHESI: But I want to be clear, I'm not here asking the court to construe the word promptly. I think if the word promptly is to be construed, I think that is what they briefed, and that's what the arbitrator's can decide. And you know, an arbitrator can decide that issue. But what we are here today on is the issue of their litigation-related conduct.
>
> THE COURT: Your waiver claim.
>
> MR. LUCCHESI: The waiver claim, and the related latch- - -I'm using waiver to include the concept of latches as well.

Tr. at 14 (Docket No. 15).

Several recent United States Supreme Court and lower court decisions affirm that when it comes to a laches claim of delay in asserting the right to arbitration, the arbitrator determines timeliness according to the terms of an arbitration agreement. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 ("[I]n the absence of an agreement to the contrary, . . . issues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide.")  To the extent laches is a theory separate from waiver, the Court concludes that it is for the arbitrator to decide the timeliness of the claims asserted in the arbitration.

(5:06 CV 2911)

For the reasons stated, the Court finds that Plaintiff has not demonstrated a likelihood of success on the merits of Count Three seeking a declaratory judgment based upon the doctrines of waiver or laches.[12]

### B. Plaintiff and Irreparable Harm

MIC argues that making it go forward with arbitration is fundamentally unfair and will cause it irreparable harm. MIC urges the Court to issue a preliminary injunction as a means of maintaining the status quo and staying the arbitration until the Court has the opportunity to rule upon the trade secrets issues in the other litigation. Plaintiff reiterates its arguments concerning prejudice to MIC as a result of PASCO's development of its case against PDP and AccuTel.

Defendant PASCO argues that MIC will suffer only financial harms if there is no stay and then suffers an adverse ruling in the arbitration. Defendant correctly notes that potential monetary damages are not a sufficient basis for preliminary injunctive relief. See Baker v. Adams County/Ohio Valley School Bd., 310 F.3d 927, 930 (6th Cir. 2002). In its reply brief, MIC argues that the irreparable harm is that "PASCO is presently pursuing an arbitration of claims that MIC believes it is not required to arbitrate. Forcing a party to arbitrate a claim that it is not required to arbitrate constitutes irreparable harm." MIC's Reply Brief, Docket No. 16 at 5.

However, for the reasons previously stated by the Court, at this preliminary stage the Court has concluded that Plaintiff has not demonstrated the likelihood of success on the merits of

---

[12]Because the Court concludes that Plaintiff has not demonstrated a likelihood of success as to "waiver, laches or the like," the Court will not address Defendant MIC's additional argument that under the Agreement any waiver between the parties would have required a signed writing by the party to be charged with the waiver.

(5:06 CV 2911)

its waiver by litigation position.  Accordingly, the Court concludes that Plaintiff MIC will not be irreparably harmed by the Court decision not to issue a stay in this matter.

### C. Substantial Harm to Others

Defendant PASCO claims that it would be substantially harmed by the issuing of a preliminary injunction. Where there exists a contractual right to arbitration, a party seeking to engage that right is prejudiced if denied resort to arbitration except upon the limited equitable and legal grounds shown herein. Because the Court has found that Plaintiff has failed at this stage to demonstrate a likelihood of success on the merits of its claims, the Court would also find that to issue a stay of the arbitration proceedings sought by PASCO would work a substantial hardship to PASCO.   Plaintiff seeks an open-ended stay of these proceedings  to permit the other litigation to be resolved.   However, it is likely there will be appeals of any decision the Court makes in the other litigation.  As the Court discussed with counsel at the hearing, it could be years before PASCO could pursue arbitration of its claims.  See Docket No. 115, Tr. at 21. Accordingly, the Court concludes that issuing the stay would cause substantial harm to the exercise of PASCO's rights under the Agreement, which the Court finds, at this stage of the proceedings, that PASCO is permitted to pursue.

### D. Impact of the Injunction on the Public Interest

Plaintiff MIC argues that even if the Court finds that Plaintiff has not demonstrated a likelihood of success on the merits of its claims, a stay of the arbitration should still issue because it is in the public interest to avoid inconsistent rulings on the trade secret issues at the heart of both cases. The Court previously outlined the briefing schedule on the issue of whether

20

(5:06 CV 2911)

PASCO has a viable action against the defendants PDP and AccuTel for trade secret violations. That matter will come at issue by March 11, 2007. MIC also points to the public policy implicated in the "waiver by litigation" doctrine and that use of the courts by one party to engage in substantial discovery is inconsistent with the policies favoring arbitration.

As previously discussed, Plaintiff has not demonstrated to the Court, at this stage of the proceedings, that the public interest purposes underlying the waiver by litigation doctrine apply to this case. Further, the Court is persuaded that strong public policies favoring arbitration of disputes will be served by denying the Plaintiff's motion for a preliminary injunction and permitting the arbitration to go forward.

Finally, the issue of potentially different rulings on the trade secret issue that may occur in the arbitration and the other litigation is also not a sufficient basis, from the perspective of the public interest, to issue a stay in this matter.   Plaintiff argues that if the Court would grant summary judgment to PDP and AccuTel and find that PASCO processes do not constitute trade secrets under Ohio law, that finding would be conclusive as to PASCO's claims against MIC in the arbitration based on collateral estoppel. Plaintiff argues that there is a public interest in avoiding potentially inconsistent judgments on the same issue.

However, at this preliminary stage of the proceedings, the Court is not persuaded that its findings in the PDP/AccuTel litigation may be used be either party to resolve issues in the arbitration. As the findings of fact demonstrate, the arbitration claims that PASCO has brought against MIC are based on the agreement on the parties to not reveal PASCO's "confidential information and trade secrets" as those terms are used in the contract. Further, it is undisputed

21

(5:06 CV 2911)

that the Agreement between PASCO and MIC  is to be governed by Michigan law based on a

choice of law provision in the Agreement. Further, the trade secrets claims between <u>PASCO v.

PDP Group</u> is a common law trade secrets claim to be decided under Ohio law. At this

preliminary stage, the Court is not convinced that the definitions of trade secrets are so similar as

the two cases go forward that a judgment in one may be deemed conclusive as to the findings to

be determined in the other. Accordingly, the public interest considerations presented in this case

do not weigh in favor of a stay of the arbitration.

**VI Conclusion**

For the reasons stated, Plaintiff MIC's motion for a preliminary injunction (Docket No.

2) is denied. Further, the motion for a stay of the contractual obligation to engage in mandatory

arbitration is also denied. The Court will publish a separate Order in furtherance of this

Memorandum Opinion.


IT IS SO ORDERED.


  January 19, 2007                               *s/ David D. Dowd, Jr.*
Date                                          David D. Dowd, Jr.
                                              U.S. District Judge

22